O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NOMADIX, INC., | ) | Case No. 2:19-cv-10202 DDP-E |
| | ) | |
| Plaintiff, | ) | **CLAIM CONSTRUCTION ORDER** |
| | ) | |
| v. | ) | [Dkt. 146] |
| | ) | |
| SIA MIKROTĪKLS, *ET AL.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Presently before the court are the parties' claim construction briefs and stipulation, detailed below. Having considered the parties' submissions and heard oral argument, the court adopts the following Order.

## I. BACKGROUND

Plaintiff Nomadix, Inc. ("Nomadix") and Defendant DIS Mikrotikls ("MikroTik") have filed claim construction briefs regarding claim terms found in five asserted patents assigned to Nomadix: U.S. Patent Numbers (1) 7,194,554 ("the '554 Patent"), (2) 6,636,894 ("the '894 Patent"), (3) 8,156,246 ("the '246 Patent"), (4) 7,554,995 ("the '995 patent"), and (5) 7,088,727 ("the '727 patent").

MikroTik filed an Opening Brief on July 25, 2022, proposing construction for ten claim terms. (Dkt. 105.) Nomadix filed a Responsive Brief on August 22, 2022, arguing that the court should reject MikroTik's proposed constructions. (Dkt. 107.) Nomadix argued that several of the terms did not require construction at all. In the event that the Court found that those terms did require a construction, Nomadix provided alternate constructions for certain terms. MikroTik filed a reply brief on February 17, 2023, agreeing with four of Nomadix's alternative constructions and revising one proposed construction in response to Nomadix's argument. At hearing, the parties clarified that they agreed in the construction of two terms, and three terms remained in dispute. After hearing, the parties filed a joint stipulation adopting this Court's claim construction order in a prior case concerning overlapping subject matter. (Dkt. 146, appending *Nomadix v. Hewlett-Packard Company et al.*, Case CV09-08441, Dkt. 458 ("the *HP* order")).

Only one term remains in dispute:[1]

---

[1] As for the terms for which MikroTik initially proposed a construction and has since withdrawn, plain and ordinary meaning applies. The court notes that during the coming stages of this litigation, the parties may present evidence as to the plain and ordinary meaning of the claim terms for a person of standard skill in the art. The parties may not argue that a term is otherwise limited.

2

| Claim Term | Nomadix's Position | MikroTik's Position |
|---|---|---|
| incorrectly configured messages ('727 claim 19) | No construction is necessary. | messages that have a source and/or destination address that is not compatible with the first network |

## II. LEGAL STANDARD

As established in *Markman v. Westview Instruments*, 517 U.S. 370 (1996), claim construction is a matter wholly within the jurisdiction of the court. *Id.* at 372 ("[T]he construction of a patent . . . is exclusively within the province of the court."). The purpose of claim construction is to "determin[e] the meaning and scope" of a patented invention in order to define the patent owner's rights. *Id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Claim construction is a legal issue that may require subsidiary findings of fact. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 841 (2015).

Generally, a claim term is given its "ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (citing *Vitronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). In patent cases, "the ordinary and customary meaning . . . is the meaning that the term would have to a person of ordinary skill in the art in question at the time of invention." *Id.* at 1313. "In some cases, the ordinary meaning . . . may be readily apparent," requiring only common sense application of a widely accepted meaning. *Id.* at 1314. However, when claim meaning is not so readily apparent, a court must determine what a skilled person in the appropriate field of art would understand a claim term to mean. *Id.*

Courts first consider the intrinsic evidence, which includes the patent claims, patent specification, and prosecution history. *Vitronics*, 90 F.3d at 1582. "Attending this principle, a claim construction analysis must begin and remain centered on the claim language itself, for that is the language the patentee has chosen to 'particularly point out and distinctly claim the [patented] subject matter.'" *Innova/Pure Water, Inc. v. Safari Water*

3

*Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) (internal brackets omitted) (quoting *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001)). A term's use in context may help to distinguish or clarify its meaning from other potential definitions. *See, e.g.*, *Phillips*, 415 F.3d at 1314 (illustrating that "steel baffles" implies that "baffles" are not intrinsically made of steel). Claim terms are commonly used consistently throughout a patent, and thus "the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.*

The claim terms must be read in light of the specification. *Id.* at 1315 (citing *Vitronics* Corp., 90 F.3d at 1582 ("[T]he specification is always highly relevant. . . . Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.")). The specification may provide insight into an inventor's understanding of her invention at the time of patenting, as it might contain an intentional disclaimer of claim scope that reveals limits on an inventor's intended invention. *Phillips*, 415 F.3d at 1316. The Federal Circuit has also recognized that an inventor may invoke a particular definition of a term in her specification or otherwise use a term in the specification in a manner that differs from the term's ordinary usage. *Id.* "In such cases, the inventor's lexicography governs." *Id.*

In addition to the patent itself, the Court "should also consider the patent's prosecution history, if it is in evidence." *Id.* at 1317. The prosecution history consists of "all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." *Vitronics*, 90 F.3d at 1582. However, because the prosecution history, also called the "file history" or "file wrapper," is a product of negotiations between the inventor and the USPTO, "it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317. Nevertheless, like the specification, the prosecution history may still be useful in understanding the inventor's understanding of their own invention. *Id.* (citing *Vitronics*, 90 F.3d at 1582–83). Moreover, during prosecution history,

4

a patent applicant may disclaim claim scope by making a clear and unequivocal disavowal of the plain meaning of ordinary claim language. *Id.* at 1319 (citing *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1204 (Fed. Cir. 2002)).

### III. ANALYSIS

The only term in dispute is "incorrectly configured messages." The parties' positions on the term are:

| Nomadix's Position | MikroTik's Position |
|---|---|
| No construction is necessary. | messages that have a source and/or destination address that is not compatible with the first network |

Claim 19 of the '727 patent reads in relevant part:

> Modifying **incorrectly configured messages** transmitted by the user device based on the network settings of the foreign network, wherein modifying **incorrectly configured messages** transmitted by the user device includes substituting the permanent address of these messages with a router address as the source address, wherein the router address is an address recognized by the foreign network.

MikroTik initially proposed that "incorrectly configured messages" be construed to mean "messages addressed to an incorrect address." Nomadix argued that such construction improperly limited the claim term to one kind of incorrectly configured message. That is, by construing the term as "messages addresed *to* an incorrect address," MikroTik was excluding messages that were incorrectly configured due to their source address. MikroTik amended their proposal as follows to address Nomadix's argument: "messages that have a source and/or destination address that is not compatible with the first network."

At hearing, the parties disputed whether "incorrectly configured messages" can encompass issues beyond incompatibility between the source/destination address and the network. Nomadix hypothesized that the incompatibility could arise from a source or destination address that, although not technically incorrect, did not correspond to any

5

device on the network. MikroTik's reference to the patent specificaiton does not rebut this possibility. The patent specification explains:

> If a host is configured incorrectly (bad address or address of a router not on the local network), then the host computer and router will be unable to communicate...

'727 patent 1:51-53. MikroTik failed to meet its burden to establish that the "incorrectly configured messages" must be limited to messages with a source or destination address incompatible with the first network. Accordingly, no construction is necessary.

| Claim Term | Court's Construction |
|---|---|
| "incorrectly configured messages" ('727 patent, claim 19) | No construction |

## IV. CONCLUSION

The Court **CONSTRUES** the disputed term and **ADOPTS** the parties stipulated construction as follows:

| Claim Term | Court's Construction |
|---|---|
| incorrectly configured messages '727 patent, claim 19 | No construction is necessary. |

| Claim Term | Stipulated Construction |
|---|---|
| foreign network '727 patent claims 19, 20 | No construction is necessary. The term does not appear in the claims as corrected by the PTO. |
| administrator '894 patent claims 1, 5 | No construction is necessary. The Court's ruling is further set forth in the *HP* Order. |

6

| | |
|---|---|
| determining the access rights of the source based upon the source profile, wherein access rights define the rights of the source to access the network<br><br>'554 patent claim 1 | No construction is necessary. The Court's ruling is further set forth in the *HP* Order. |
| determining the access rights of the source based upon the identification of the source, wherein the access rights define the rights of the source to access destination sites via the network<br><br>'554 patent claim 17 | No construction is necessary. The Court's ruling is further set forth in the *HP* Order. |
| regardless of network configurations '554 patent claims 1, 17 | regardless of network address settings<br><br>The Court's ruling is further set forth in the *HP* Order. |

| | |
|---|---|
| the source<br><br>'554 patent claims 1, 17 | Not indefinite, as Defendant SIA Mikrotīkls withdrew its request for an indefiniteness ruling. No construction is necessary. |
| the gateway device '554 patent claim 1 | Not indefinite, as Defendant SIA Mikrotīkls withdrew its request for an indefiniteness ruling. No construction is necessary. |
| the destination address<br><br>'554 patent claim 24 | Not indefinite, as Defendant SIA Mikrotīkls withdrew its request for an indefiniteness ruling. No construction is necessary. |

| | |
|---|---|
| the second local area network<br><br>'727 patent claim 15 | Not indefinite, as Defendant SIA Mikrotīkls withdrew its request for an indefiniteness ruling. No construction is necessary. |
| the user host device is configured to communicate through a home gateway by using an IP address of the home gateway<br><br>'995 patent claim 24 | No construction is necessary. |
| home network<br><br>'727 patent claim 20 | No construction is necessary. |
| a foreign gateway<br><br>'995 patent claim 24 | a gateway not on a network of the home gateway |
| an incompatible private IP address<br><br>'727 patent claim 11 | a private IP address not compatible with the network |

**IT IS SO ORDERED.**

Dated: March 8, 2023

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE